1
2
3
4
5
6                          UNITED STATES DISTRICT COURT

7                               DISTRICT OF NEVADA

8                                      * * *

9    BRAE HULERY,                          Case No. 3:13-cv-00455-MMD-WGC

10                          Plaintiff,

11          v.                                          ORDER

     NV ENERGY, INC. and CATINA RITTER,         (Def's Motion to Dismiss – dkt. no. 6)
12   an employee of NV Energy, et al,

13                          Defendants.

14

15   **I.     SUMMARY**

16          Before the Court is Defendants NV Energy, Inc. ("NV Energy") and Catina Ritter's

17   Motion to Dismiss ("Motion"). (Dkt. no. 6.) For the reasons set out below, the Motion is

18   granted.

19   **II.    BACKGROUND**

20          Plaintiff Brae Hulery filed the Complaint in district court in the State of Nevada,

21   Washoe County, and Defendants removed to this Court on August 23, 2013. (Dkt. no. 1.)

22          The Complaint alleges the following. Plaintiff was an employee of Defendant NV

23   Energy. (Dkt. no. 1-1, Ex. 1 at ¶ 6.) Defendant Ritter became a manager for Plaintiff's

24   crew in October, 2012. (*Id.* at ¶ 7.) Plaintiff's crew was led by Gary Bailey. (*Id.*) Ritter

25   instituted a crew change switching Plaintiff to Andy Byrd's crew. (*Id.* at ¶ 7-8.) On or

26   about December 4, 2012, Plaintiff complained to Ritter that Plaintiff had been granted a

27   request to be removed from Byrd's crew in the past because of Byrd's "inappropriate[]

28   screaming, yelling, and exhibiting inappropriate behavior . . . ." (*Id.* at ¶ 9.) Plaintiff thus

1    asked to remain on Bailey's crew instead. (*Id.*) Ritter "kept Plaintiff on Byrd's crew and

2    instructed Plaintiff as a solution for Plaintiff to stay away from Byrd." (*Id.*) Bailey spoke to

3    Ritter and asked that Plaintiff stay on his crew but Ritter denied his request, advising him

4    that she was trying to "balance the crews." (*Id.* at ¶10.)

5          On or about December 21, 2012, Plaintiff was called on "to start up the T3

6    equipment" and Plaintiff asked another employee, Kevin Lavely, to help him. (*Id.* at ¶

7    11.) Later that day, Ritter called Plaintiff into her office "and advised that she had had

8    [Lavely] evaluate Plaintiff on the start up, and that Plaintiff had done ten things

9    incorrectly." (*Id.*) Between December 21, 2012, and January 9, 2013, Ritter also

10   contacted Lavely and another employee, Brad Early, to ask about Plaintiff's

11   performance. (*Id.* at ¶12.)

12         Plaintiff was switched to Byrd's crew on January 16, 2013. (*Id.*) On or about

13   February 7, 2013, Plaintiff told Ritter that he was unhappy on Byrd's crew and Ritter told

14   him to send her a "professional email with Plaintiff's personal reasons for switching

15   crews" and also remarked that "[i]t doesn't matter what weekends [Plaintiff has] off if [he

16   doesn't] have a paycheck." (*Id.* at ¶ 13.) Plaintiff made a complaint on NV Energy's

17   Integrity Hotline on February 28, 2013, and was told he would receive a response in ten

18   (10) days. (*Id.* at ¶ 15.) After three weeks without a response, he filed another complaint

19   with the Integrity Hotline regarding NV Energy's failure to respond to his first complaint.

20   (*Id.* at ¶ 16.)

21         Plaintiff arrived ten minutes late for work on March 13, 2013, and Ritter required

22   him to fill out a form so that the ten minutes could be deducted from his paycheck. (*Id.* at

23   ¶ 18.)

24         Plaintiff had an incident with Byrd in which Byrd screamed at him and caused him

25   to have a panic attack. (*Id.* at ¶ 19.) Plaintiff requested a meeting with Ritter to discuss

26   the incident. (*Id.* at ¶ 20.) At the meeting, which occurred on or about April 3, 2013, and

27   included Ritter as well as two people from human resources, Plaintiff explained his

28   issues with Byrd and asked to be removed from his crew. (*Id.*) Ritter said "she would

1   look into these matters and speak to human resources about Plaintiff." (*Id.*) Later,

2   Plaintiff also informed Ritter that he was on prescription medication to treat his stress

3   and that he had filed a complaint with the Integrity Hotline but had not heard back. (*Id.*)

4       Plaintiff met with two human resources representatives on April 10, 2013, for

5   approximately three hours. (*Id.* at ¶ 22.) The next day, Plaintiff received his performance

6   evaluation from Ritter and was told that he needed improvement and was being put on a

7   performance plan. (*Id.* at ¶ 23.) The day after his performance evaluation, Ritter stopped

8   an equipment test and had Plaintiff call human resources. (*Id.* at ¶ 24.) Ryan Lee, of

9   human resources, told Plaintiff that Ritter told Lee that Plaintiff was taking Xanax at work.

10  (*Id.*) Plaintiff told Lee that he was not taking Xanax at work and that it had been

11  prescribed to help him sleep. (*Id.*) Lee informed Plaintiff that Lee may need a note from

12  Plaintiff's physician. (*Id.*)

13      Based on these allegations, the Complaint asserts the following claims: (1) hostile

14  work environment; (2) negligent infliction of emotional distress; (3) intentional infliction of

15  emotional distress; (4) failure to follow departmental procedure; (5) failure to prevent

16  workplace violence; and (6) retaliation for reporting workplace violence. (*Id.* at 7-11.)

17      Defendants move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. no. 6.)

18  Defendants argue that resolving Plaintiff's claims for hostile work environment, negligent

19  infliction of emotional distress, intentional infliction of emotional distress and failure to

20  follow departmental procedure depends on the Court's interpretation of provisions of

21  Plaintiff and NV Energy's collective bargaining agreement ("CBA") and therefore those

22  claims are preempted by Section 301 of the Labor Management Relations Act ("LMRA"),

23  29 U.S.C. § 185(a). (Dkt. no. 6 at 1-2.) Defendants also argue that Plaintiff has failed to

24  state any claims upon which relief may be granted. (*Id.*) Plaintiff filed an opposition (dkt.

25  no. 14) and Defendants filed a reply (dkt. no. 15).

26  ///

27  ///

28  ///

III.     **DISCUSSION**

    **A.     Legal Standard**

        **1.  Rule 12(b)(6)**

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Rule 8 notice pleading standard requires Plaintiff to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. (internal quotation marks and citation omitted). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 US 662, 678 (2009) (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss.  First, a district court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 679. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678. Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged–but not shown–that the pleader is entitled to relief." *Id.* at 679 (internal
///

1    quotation marks omitted). When the claims in a complaint have not crossed the line from
2    conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570.

3         A complaint must contain either direct or inferential allegations concerning "all the
4    material elements necessary to sustain recovery under some viable legal theory." *Id.* at
5    562 (*quoting Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989)
6    (emphasis in original)).

7                    **2.     Section 301 of the LMRA**

8         Section 301(a) of the LMRA provides federal jurisdiction over "[s]uits for violation
9    of contracts between an employer and a labor organization." 29 U.S.C. § 185(a).
10   "Section 301 completely preempts any state causes of action based on alleged
11   violations of contracts between employers and labor organizations." *Ramirez v. Fox*
12   *Television Station, Inc.*, 998 F.2d 743, 747 (9th Cir. 1993) (citation omitted). Section
13   301's preemptive force is "so powerful as to displace entirely any state claim based on a
14   collective bargaining agreement, . . . and any state claim whose outcome depends on
15   analysis of the terms of the agreement." *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d
16   993, 997 (9th Cir. 1987) (internal citations omitted).

17        Once preempted, "any claim purportedly based on [a] . . . state law is considered,
18   from its inception, a federal claim, and therefore arises under federal law." *Burnside v.*
19   *Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007) (*citing Caterpillar, Inc. v.*
20   *Williams*, 482 U.S. 386, 393 (1987)). This is true even where plaintiffs have not alleged a
21   breach of a collective bargaining agreement in their complaint so long as the plaintiffs'
22   claim is either grounded in the provisions of the labor contract or requires interpretation
23   of it. *Id.* (*citing Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985)). The purpose of
24   such a broad preemption is to ensure that plaintiffs are not able "to evade the
25   requirements of section 301 by relabeling their contract claims as claims for tortious
26   breach of contract" or some other state cause of action, and thus "elevate form over
27   substance." *Lueck*, 471 U.S. at 211.

28   ///

1   In analyzing preemption pursuant to Section 301, the Ninth Circuit follows a two-
2   step inquiry. The first step is for the Court to determine whether "the asserted cause of
3   action involves a right conferred upon an employee by virtue of state law" or a right that
4   "exists solely as a result of the CBA." *Burnside*, 491 F.3d at 1059. "If the right exists
5   solely as a result of the CBA, then the claim is preempted, and [the Court's] analysis
6   ends there." *Id.* If, however, the right exists independent of the CBA, then the Court must
7   proceed to the second step and consider whether the right is nevertheless "substantially
8   dependent on analysis of [the CBA]." *Id.* (*citing Caterpillar*, 482 U.S. at 394; *Lueck*, 471
9   U.S. at 213). If such dependence exists then the claim is preempted, otherwise the claim
10  may proceed under state law. *Burnside*, 491 F.3d at 1059-60.

11  For the first step of the analysis, the Court considers whether "the *legal* character"
12  of a state law claim is independent of rights established by the CBA and "not whether a
13  grievance arising from precisely the same set of facts could be pursued" under the CBA.
14  *Id.* at 1060 (internal quotation marks and citations omitted). For instance, a state law
15  discrimination claim "need not be preempted merely because certain aspects of the
16  collective bargaining agreement govern work assignments and discharges." *Hernandez*
17  *v. Creative Concepts, Inc.*, 862 F. Supp. 2d 1073, 1089 (D. Nev. 2012) (*citing Detabali v.*
18  *St. Luke's Hosp.*, 482 F.3d 1199, 1203 (9th Cir. 2007)).

19  For the second step of the analysis, the Court must determine whether the state
20  law claim can be resolved by "looking to" the CBA rather than interpreting it. *Burnside*,
21  491 F.3d at 1060 (citations omitted). If the Court must interpret the CBA, then the claim
22  is preempted, but if the claim can be resolved by only "looking to" the CBA, then it is not
23  preempted. *Id.* Referencing the CBA to "discern that none of its terms is reasonably in
24  dispute" is not interpretation and does not warrant preemption. *Id.* (citation omitted).
25  "[E]ven if dispute resolution pursuant to [the CBA], on the one hand, and state law, on
26  the other, would require addressing precisely the same set of facts, as long as the state-
27  law claim can be resolved without interpreting the agreement itself, the claim is
28  ///

1  'independent' of the agreement for § 301 pre-emption purposes." *Lingle v. Norge Div. of*

2  *Magic Chef, Inc.*, 486 U.S. 399, 409-10 (1988).

3  ### 3.    Analysis

4  The Complaint is dismissed as it fails to satisfy the pleading standards set out by

5  Rule 8. The Rule 8(a) notice pleading standard requires Plaintiff to "give the defendant

6  fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550

7  U.S. at 555 (internal quotation marks and citation omitted). The Court cannot identify the

8  factual basis for Plaintiff's emotional distress claims, and cannot identify the legal theory

9  at issue in Plaintiff's other claims because the Complaint is vague and unsatisfactory.

10  The Court cannot conduct a preemption analysis as to Plaintiff's claims without first

11  understanding the legal theory and facts they are based on. Preemption analysis is thus

12  premature at this stage.

13  ### a.    Plaintiff's Emotion Distress Claims

14  Plaintiff's second and third claims for relief assert negligent infliction of emotional

15  distress and intentional infliction of emotional distress, respectively. (Dkt. no. 1-1, Exh. 1

16  at 8-9.) To recover for negligent infliction of emotional distress under Nevada law, a

17  plaintiff must establish that a negligent act was committed. *See Shoen v. Amerco, Inc.*,

18  896 P.2d 489, 477 (Nev. 1995). To recover for intentional infliction of emotional distress,

19  a plaintiff must establish that extreme and outrageous conduct caused plaintiff to suffer

20  emotional distress. *See Nelson v. City of Las Vegas*, 665 P.2d 1141, 1145 (Nev. 1983).

21  The Complaint, however, does not allege Defendants were negligent or engaged in

22  extreme and outrageous conduct.

23  Plaintiff's claim for negligent infliction of emotional distress is insufficiently plead

24  because Plaintiff fails to identify a duty of care owed to Plaintiff that was breached by

25  Defendants conduct. *See Switzer v. Rivera*, 174 F. Supp. 2d 1097, 1009 (D. Nev. 2001).

26  With regard to Plaintiff's claim for intentional infliction of emotional distress, the

27  Complaint does not allege extreme and outrageous conduct. While the Complaint states

28  that "[t]he acts of Defendants herein described have caused Plaintiff severe emotional

distress[,]" it merely refers to all of the Complaint's factual allegations without identifying the alleged conduct that is extreme and outrageous. (Dkt. no. 1-1, Exh. 1 ¶ 39.) The Complaint details Plaintiff's interactions with Ritter and his attempts to transfer out of Byrd's crew but gives no indication as to what conduct is alleged to be "beyond all possible bounds of decency . . . atrocious and utterly intolerable." *See Hirschhorn v. Sizzler Rests. Int'l, Inc.*, 913 F. Supp. 1393, 1401 (D. Nev. 1995).

Defendants argue that these emotional distress claims are preempted because they depend on whether the asserted outrageous or negligent conduct violated the terms of the CBA. (Dkt. no. 6 at 11.) As the Complaint fails to allege negligent, extreme or outrageous conduct, however, the Court cannot determine at this stage whether interpretation of the CBA will be required in resolving Plaintiff's emotional distress claims. The Complaint fails to sufficiently allege "all the material elements necessary to sustain recovery" as to Plaintiff's emotional distress claims and they are therefore dismissed. *See Twombly*, 550 U.S. at 562.

### b.     Plaintiff's Remaining Claims

As to Plaintiff's first claim for relief, the Court is not aware of any cause of action under state law for hostile work environment. (Dkt. no. 1-1, Exh. 1 at 7.) While a plaintiff may allege a hostile work environment in asserting claims of discrimination or sexual harassment, there is no clearly established right in Nevada to be free from a generally hostile workplace. *See, e.g.*, *Chavez v. Sievers*, 43 P.3d 1022, 1024 (Nev. 2002) (plaintiff alleges workplace environment hostile to Hispanics in bringing discrimination claims under state and federal law). The Complaint also refers to "retaliation" but the Court is not aware of a right to be free from retaliation generally. (Dkt. no. 1-1, Exh. 1 ¶ 29.) NRS § 613.310 *et seq.* and Title VII address retaliation and hostile work environment in certain specific contexts, but the Complaint does not allege that Plaintiff is part of a protected class, protected status or a victim of sexual harassment, and does not identify any state or federal statute as a basis for Plaintiff's claim. It is thus difficult for the Court to discern Plaintiff's legal theory from the language of the Complaint.

The inadequacy of Plaintiff's hostile work environment claim is reflected in the fact that the parties appear to disagree over the nature of it. Defendants read the claim as asserting a violation under NRS § 613.310 *et seq.* (Dkt. no. 6 at 14-15.) Plaintiff appears to argue in his opposition, however, that his claim for hostile work environment is based on Defendants' violation of NV Energy's internal policies. (Dkt. no. 14 at 10.)

As to Plaintiff's fourth claim for relief, the Court is not aware of any cause of action under state law for failure to follow departmental procedure and Plaintiff does not provide any state or federal statutory basis for this claim. Defendants read Plaintiff's fourth claim for relief as a tortious discharge claim, because the Complaint mentions that Defendants' behavior "constituted a public policy violation by refusing to address matters brought to their attention by Plaintiff in a timely manner." (Dkt. no. 6 at 18–19; dkt. no. 1-1, Exh. 1 ¶ 46.) However, the Complaint does not allege that Plaintiff was terminated, and under Nevada law "[a]n employer commits a tortious discharge by *terminating* an employee for reasons which violate public policy." *D'Angelo v. Gardner*, 819 P.2d 206, 212 (Nev. 1991) (emphasis added). Plaintiff's intended legal basis is therefore unclear.

As to Plaintiff's fifth claim for relief, the Court is not aware of any cause of action under state law for failure to prevent workplace violence and Plaintiff does not provide any statutory basis for the claim. Defendants cannot identify the legal basis for this claim but interpret it as a restatement of Plaintiff's first claim for relief — hostile work environment. (Dkt. no. 6.) Indeed Plaintiff appears to agree, arguing in his opposition that his claim for failure to prevent workplace violence, like Plaintiff's hostile work environment claim, is based on Defendants' violation of NV Energy's internal policies. (Dkt. no. 14 at 10.) Similar to Plaintiff's first claim for relief, the Court, and Defendants, cannot discern the legal basis for Plaintiff's failure to prevent workplace violence claim.

Lastly, as to Plaintiff's sixth claim for relief, the Court is not aware of any cause of action under Nevada law for general retaliation. While NRS § 613.340 provides a legal basis for a retaliation claim if an employee opposes an unlawful employment practice as defined by NRS § 613.310 to NRS § 613.435, the Complaint makes no such allegations.

1   As previously discussed, Plaintiff does not identify a statutory basis for any of his claims
2   or make any allegations pursuant to Nevada's equal opportunities statutes. The Court
3   cannot identify a legal basis for Plaintiff's retaliation claim.

4       Plaintiff has failed to provide "a short and plain statement of the claim showing
5   that the pleader is entitled to relief" in accordance with Rule 8 and Plaintiff's claims for
6   hostile work environment, failure to follow departmental procedure, failure to prevent
7   workplace violence and retaliation are dismissed.

8                    **c.    Leave to Amend**

9       Plaintiff asks for leave to amend. (Dkt. no. 14 at 12-13.) After the period
10  for leave to amend as of right has expired (as it has here), a party must either obtain the
11  other party's consent or seek leave of court to amend a pleading. Fed. R. Civ. P.
12  15(a)(2). The court should give leave to amend freely when justice requires, though
13  leave need not be granted where amendment: "(1) prejudices the opposing party; (2) is
14  sought in bad faith; (3) produces an undue delay in litigation; or (4) is
15  futile." *Amerisource Bergen Corp. v. Dialysist West, Inc.,* 465 F.3d 946, 951 (9th Cir.
16  2006) (citation omitted).

17      Defendants argue that leave to amend should not be granted because
18  amendment would be futile. (Dkt. no. 15 at 13-14.) The Court disagrees. While
19  Defendants argue that Plaintiff's claims are preempted, the Court cannot conduct a
20  preemption analysis at this stage due to the deficiencies in the Complaint. Plaintiff has
21  not yet had an opportunity to file an amended complaint, and has not demonstrated bad
22  faith, undue delay or a dilatory motive. In the interests of allowing Plaintiff to clarify his
23  claims and the Court to proceed with a preemption analysis, Plaintiff will be provided with
24  an opportunity to cure the deficiencies in the Complaint. There is no prejudice to
25  Defendants because, if Plaintiff is able to satisfy Rule 8's pleading standards,
26  Defendants may again move to dismiss on preemption grounds. If Plaintiff again fails to
27  state a legal basis for his claims, this action will be dismissed with prejudice. Good cause
28  appearing, Plaintiff is given leave to amend.

1    **IV.    CONCLUSION**

2        It is hereby ordered that Defendants' Motion to Dismiss (dkt. no. 6) is granted.

3    The Complaint is dismissed without prejudice. Plaintiff may file an amended complaint

4    within fifteen (15) days. Failure to file an amended complaint will result in dismissal with

5    prejudice.

6
        DATED THIS 9th day of September 2014.
7

8        _____

9        MIRANDA M. DU
         UNITED STATES DISTRICT JUDGE
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28